IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re<br><br>Lodging Enterprises, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No.: 24-40423 |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF
SUPER 8 WORLDWIDE, INC., TRAVELODGE HOTELS, INC.,
BAYMONT FRANCHISE SYSTEMS, INC., AND DAYS INNS WORLDWIDE,
INC. WITH RESPECT TO DEBTOR'S MOTION FOR ORDER ESTABLISHING
BAR DATE FOR FILING OR AMENDING PROOFS OF CLAIM**

Super 8 Worldwide, Inc. ("SWI"), Travelodge Hotels, Inc ("THI"), Baymont Franchise Systems, Inc ("BFS"), and Days Inns Worldwide, Inc. (collectively, the "Wyndham Franchisors") by and through their undersigned counsel, file this limited objection (the "Limited Objection") to the *Debtor's Motion for Order Establishing Bar Date for Filing or Amending Proofs of Claim* (the "Bar Date Motion") [ECF No. 179].

### I. PRELIMINARY STATEMENT

1. The Bar Date Motion seeks to set a deadline for the filing of proofs of claims <u>and</u> amended proofs of claim. Specifically, the Bar Date Motion seeks to set a bar date of no later than thirty (30) days after entry of any order on the motion. The Bar Date Motion also specifically requests that any bar date specifically apply to and limit the time for filing amended proofs of claim, in addition to proofs of claim that may be filed in the first instance.

2. Relatively speaking, this case is still in its infancy, with the petition for relief filed approximately two months ago on June 26, 2024 (the "Petition Date"). No plan of reorganization has been filed.

1

320049088.4

3. The Wyndham Franchisors have no objection to the establishment of a bar date; however, they do object to said bar date serving as an absolute bar precluding any amendment(s) to timely filed proofs of claim.

## II.    RELEVANT FACTS [1]

**A.    The Wyndham – Debtor Relationships.**

4. In November of 2017, Lodging Enterprises, LLC (the "Debtor") entered into the Portfolio Franchise Agreements (defined, *infra*) as well as other agreements with certain of the Wyndham Franchisors. The Wyndham Franchisors are subsidiaries of Wyndham Hotel Group, LLC, which is a subsidiary of Wyndham Hotels & Resorts, Inc.

5. Debtor and the applicable Wyndham Franchisors are parties to forty-four (44) separate franchise and related agreements, as subsequently amended, (collectively, the "Portfolio Franchise Agreements"). Generally, the Portfolio Franchise Agreements authorize Debtor to operate its forty-four (44) hotels (collectively, the "Debtor Portfolio Properties") under the franchise systems offered by the Wyndham Franchisors, and to use trademarks and other intellectual property of the Wyndham Franchisors in the operation of those hotels.

9. Per the Statements and Schedules filed by the Debtor [ECF No. 163], as of the Petition Date, the outstanding pre-petition amounts due by Debtor to the Wyndham Franchisors under the Portfolio Franchise Agreements was at least $538,675.22 in the aggregate.[2]

---

[1] Unless otherwise noted, factual support for this Limited Objection is contained in the Declaration of Kendra Mallet (the "Mallet Declaration") and/or the exhibits thereto (ECF No. 173-1) which was filed in response to the Debtor's prior *Motion for Entry of an Order (I) Authorizing (A) the Sale of Certain Real Property Free and Clear of Liens, Claims, and Encumbrances, and (B) the Debtor to Enter Into and Perform Under the PSA; and (II) Granting Related Relief* (the "Sale Motion") [ECF No. 134].

[2] The Wyndham Franchisors, reserve all rights as to the nature and extent of the amounts due from Debtor and reserve their right to file proofs of claim and/or other pleadings in that regard.

B. **The Wyndham Franchisors.**

10. The Wyndham Franchisors do not own or operate any hotels. Instead, they operate guest-lodging facility franchise systems. The systems, broadly stated, are comprised of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos and derivations thereof.

11. The Wyndham Franchisors have the exclusive right to use and license certain trade names, trademarks, and service marks [3] which have been registered on the Principal Register of the United States Patent and Trademark Office, with other appropriate state agencies in the United States, and with governmental agencies of foreign countries. These marks, together with certain other trademarks and service marks which are not registered, or which are pending registration, are hereinafter collectively referred to as the "Wyndham Franchisor Marks" [4].

12. The Wyndham Franchisors have developed a franchise system for the promotion and assistance of independently owned and/or operated guest lodging facilities designed to enable such facilities to compete effectively in the hospitality market (which system is hereinafter referred to as the "Wyndham Franchisor Systems")[5]. The Wyndham Franchisor Systems include, but are not limited to, common use and promotion of certain Wyndham Franchisor Marks, copyrights, trade secrets, centralized advertising programs, referral programs, and centralized support functions such as a nationwide computer reservation system. The Wyndham Franchisors, from time to time, revise and update their respective Wyndham Franchisor Systems.

---

[3] Including the names "Super 8" ®, "Travelodge" ®, "Baymont" ®, and "Days Inn" ®.

[4] Specifically, the "Super 8 ® Marks", the "Travelodge ® Marks", the "Baymont ® Marks", and the "Days Inn ® Marks."

[5] Specifically, the "Super 8 ® System", the "Travelodge ® System", the "Baymont ® System", and the "Days Inn ® System."

13. The Wyndham Franchisors or their predecessors have continuously used each of the Wyndham Franchisor Marks since the date of their registration and those service marks are in full force and effect pursuant to 15 U.S.C. § 1065. The Wyndham Franchisors have given notice to the public of the registration of the Wyndham Franchisor Marks as provided in 15 U.S.C. § 1111, and the Wyndham Franchisors use or have used the Wyndham Franchisor Marks as abbreviations of their respective brand names.

14. The hotels operating as part of the franchise system are all independently owned and operated. The Wyndham Franchisors allows their franchisees, pursuant to individual license or franchise agreements, to operate their hotels as guest-lodging facilities utilizing the applicable Wyndham Franchisor Marks and System(s). Through their franchise systems, the Wyndham Franchisors market, promote, and provide services to their franchisees throughout the United States. To identify the origin of their services, the Wyndham Franchisors allow their franchisees to utilize the Wyndham Franchisor Marks and to otherwise associate their facilities services with the Wyndham Franchisor brands.

C. **The Portfolio Franchise Agreements**.

15. Each of the forty-four (44) hotels in the Debtor Portfolio Properties are the subject of a Portfolio Franchise Agreement with the applicable Wyndham Franchisor, pursuant to which the Debtor is authorized to operate the Facility as a branded hotel facility using the appliable Wyndham Franchisor Marks and System.

16. Each Portfolio Franchise Agreement requires the Debtor to operate the Facility as a branded guest lodging facility in the applicable Wyndham Franchisor System for a term of years from the approved Effective Date. See e.g. Mallet Declaration, **Ex. "A"** at Section 5.

17. Each Portfolio Franchise Agreement provides that the license granted by the applicable Wyndham Franchisor is a non-exclusive, personal license granted to the Debtor only. See e.g. id. at Section 9.1.

18. Pursuant to the Portfolio Franchise Agreements, the Debtor is required to pay the applicable Wyndham Franchisor "Recurring Fees," including royalties, system assessment fees, taxes, and other charges. See e.g. id. at Section 7.1-7.4. Debtor is obligated to pay the Recurring Fees within the number of days specified in the applicable Portfolio Franchise Agreement and Wyndham Franchisor System Standards, without billing or demand. See e.g. id. at Section 7.1. Nonpayment of these fees is an event of default under the applicable Portfolio Franchise Agreement. See e.g. Id. at Section 11.1(a). Loss of possession of the applicable hotel facility by the Debtor is not only a separate event of default under the applicable Portfolio Franchise Agreement, but also an incurable event of default. See e.g. Id. at Section 11.2(4).

19. In the event of premature termination, each Portfolio Franchise Agreement requires payment of Liquidated Damages by Debtor to the applicable Wyndham Franchisor. See e.g. id. at Sections 12 and 18.6, as modified by the Nashville A&A at Section 1. E and 1. F. Each of the Portfolio Franchise Agreements also imposes other post-termination duties and obligations on the Debtor, including the obligation to de-identify the hotel facility from its appearance as a hotel affiliated with the applicable Wyndham Franchisor System. See e.g. id. at Section 13.

20. The Wyndham Franchisors' entitlement to liquidated damages arise from the applicable Portfolio Franchise Agreement(s) but such claim(s) would not be ripe or collectible until such time as the applicable Portfolio Franchise Agreement was terminated – which time could be well after any Bar Date set by the Court as a result of the Bar Date Motion.

C.     **The Debtor's Breach of the Portfolio Franchise Agreements and Bankruptcy Filing.**

21.    On June 26, 2024, Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Per the statements and schedules filed by the Debtor, as of the Petition Date, Debtor was in default of its monetary obligations under the Portfolio Franchise Agreements in the amount of $538,675.22 (the "Combined Pre-Petition Indebtedness").[6] The entitlement of the Wyndham Franchisors to liquidated damages would be in addition to the Combined Pre-Petition Indebtedness.

E.     **The Bar Date Motion.**

22.    On August 14, 2024, Debtor filed the Bar Date Motion seeking authorization to establish a Bar Date for the filing of proofs of claim and amended proofs of claim and to otherwise approve a form of Notice to Creditors advising of the Bar Date as may be set by the Court.

23.    Specifically, the Bar Date Motion recites, at paragraph 5:

> Pursuant to Bankruptcy Rule 3003(c)(3), Debtor requests that the Court set the bar date no later than thirty (30) days after approval of this Motion (the "Bar Date") for the filing of proofs of claim ***or amended proofs of claim*** by all creditors and equity security holders, including the claims of governmental units (except to the extent that governmental claims may be filed by a later date otherwise established by law), for any prepetition claim, …

(emphasis added).

24.    At this early point in the case, the parties do not know if the Debtor will retain ownership of the Debtor Portfolio Properties, or if said properties may be sold to one or more third parties. It is therefore impossible for the parties to know whether the Portfolio Franchise Agreements will be assumed, assumed and assigned, or rejected and terminated.

---

[6] The Wyndham Franchisors, reserve all rights as to the nature and extent of the amounts due from Debtor and reserve their right to file proofs of claim and/or other pleadings in that regard.

25. Because liquidated damages do not ripen until such time as a Portfolio Franchise Agreement may be terminated (a "Termination Event"), and because a Termination Event may well occur after the Bar Date that may be set by the Court, the Bar Date Motion, if granted as filed by the Debtor, would preclude the Wyndham Franchisors from amending any timely proofs of claim filed by them to assert the liquidated damages - to which they are contractually entitled – in those cases where a Portfolio Franchise Agreement is terminated after the Bar Date.

26. The amount of liquidated damages is calculated in accordance with a formula set forth in the Portfolio Franchise Agreements and will vary from property to property based on the financial performance of the applicable facility and/or the number of rooms. In each case, there is a minimum amount of liquidated damages based on $2,000 x the number of rooms in the applicable hotel. Based on the minimum per room formulae, the Wyndham Franchisors estimate that the aggregate minimum liquidated damages for all 44 Debtor Portfolio Properties is at least $7,588,000. Thus, the Debtor's attempt to preclude the amendment of timely filed proofs of claim could be used as a sword to materially prejudice the contractual rights of the Wyndham Franchisors.

### III. STATEMENT OF QUESTIONS PRESENTED

27. Whether the scope of the Bar Date proposed by the Debtor is appropriate in terms of the age and circumstances of the bankruptcy case, particularly in terms of its preclusion of any amended claims in derogation of the Bankruptcy Code, principles of fairness and equity, and applicable precedent in this jurisdiction.

## IV. LIMITED OBJECTION

**A. The Court Should Deny that Part of the Bar Date Motion that would Preclude the Appropriate Amendment of Timely Filed Claims and/or Specifically Provide for the Allowance of Amendments Triggered by Post-Bar Date Events.**

28. The Wyndham Franchisors do not oppose the Bar Date Motion to the extent it seeks the establishment of a Bar Date for the filings of proofs of claim against the Debtor. They do, however, object to the expansion of any Bar Date to preclude the filing of any amendments to timely filed claims. This proposed expansion is contrary to the Bankruptcy Code, contrary to the Bankruptcy Courts fundamental identity as courts of equity and, potentially, meaningfully prejudicial to the rights and entitlements of the unsecured creditor body, including the rights of the Wyndham Franchisors.

29. The Tenth Circuit has "long applied a permissive standard for amendments to timely-filed claims" In re Goodwin, 2022 WL 2541216, p. 2 (Bankr. D. Kan. 2022) (Somers, J.) *citing* Unioil v. H.E. Elledge (In re Unioil, Inc.), 962 F.2d 988, 992 (10th Cir. 1992). Specifically, "'amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable.'" In re Tanaka Bros. Farms, Inc., 36 F.3d 996, 998 (10th Cir. 1994) *quoting* Unioil, 962 F.2d at 992. Generally, a creditor's "[l]ate-filed amendments to proofs of claim should be treated with liberality." Id. *quoting* Uniol, at 992–93.

30. While there will always be established deadline for filing proofs of claim in bankruptcy cases, "neither the Bankruptcy Code nor any provision of the Federal Rules of Bankruptcy Procedure specifies a deadline for filing an amendment to a timely filed proof of claim." In re Spurling, 391 B.R. 783, 786 (Bankr. E.D. Tenn. 2008). Many Courts "base the right to amend proofs of claim on Rule 15 of the Federal Rules of Civil Procedure, which governs the amendment of pleadings." In re Breaux 410 B.R. 236, 239 (Bankr. W.D. La 2009) citing, *In re*

8
320049088.4

Case 24-40423   Doc# 213   Filed 08/28/24   Page 8 of 11

*Unroe,* 937 F.2d 346 (7th Cir.1991) (creditor could amend a claim if it satisfies the "relation back" test in Rule 15). Rule 15 provides generally that an amendment will relate back to the original filing if "the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Spurling 391 B.R. at 786; see also In re JB and Company Chevron, LLC, (Bankr. D. N. M. 2021) 2021 WL 10555717 at p. 6 (An allowed amended claim relates back to the date of the filing of the original proof of claim).

31. In the case of In re Breaux, the Bankruptcy Court allowed an amendment to the proof of claim after the bar date where the amended claim was grounded on the same facts and transactions and instruments reflected in the original proof of claim and the events triggering the right to amend occurred after the bar date. In the case of Continental Motors Corp. v. Morris, the Tenth Circuit allowed an amendment increasing the amount of a claim based on an executory contract as same "did not constitute a new claim. It constituted only additional items of the claim or grounds for recovery on file." Continental Motors Corp. v. Morris, 169 F.2d 315, 317 (10th Cir. 1948). In so doing, the Continental Motors Court emphasized that "bankruptcy courts are equitable courts and seek to do equity…." and that courts should employ "the greatest liberality in the allowance of the filing of amended proofs of claim" Id. (citations omitted).

32. According to the Continental Motors Court, the real inquiry was "whether such added items of damage constitute new and distinct claims which would have to be filed within the period provided for proofs of claim, or whether they relate only to the claim filed and merely make it more definite without setting out any new matter improper in an amendment. Id. at 316; see also In re Goodwin, 2022 WL 2541216 (Somers, J.) at p. 2 (As long as the grounds for recovery are set out in the original claim, the amount of recovery is amendable.); In re JB and Company Chevron,

LLC, 2021 WL 10555717 at p. 6, *citations omitted* ("Amendments to proofs of claim timely filed are to be freely allowed… for purposes of particularizing the amount due under a previously-asserted right to payment, ….").

33. Indeed, "[t]he only limitation is that the amended claim should not set up a distinctly new and different claim." In re Goodwin, 2022 WL 2541216 (Somers, J.) at p. 2 *citing* Fidelity & Deposit Co. of Md. v. Fitzgerald, 272 F.2d 121, 130 (10th Cir. 1959). In addition, to object to an amendment, the objecting party would need to show "actual prejudice." Id. *citing* Continental Motors at 317.

34. In this case, the Wyndham Franchisors have every intention of timely filing appropriate, and well-supported proofs of claim prior to any Bar Date set by the Court. If, after such Bar Date as may be established by this Court, the circumstances of this case change in such a way that changes the calculation of the damages to which the Wyndham Franchisors are contractually entitled under Portfolio Franchise Agreements, the Debtor should not benefit from an arbitrary and artificial Bar Date that can be used to defeat these legitimate claims.

35. Any amended claim(s) by the Wyndham Franchisors, asserting liquidated damages or other amended claims, would flow from the same Portfolio Franchise Agreements that would underly any timely filed claims. They would not represent new or distinct claims, but rather would merely represent a re-calculation of timely filed claims. Stated otherwise, they would "particularize the amount due under a previously-asserted right to payment." Therefore, such amended claims would "relate back" to the original claim(s) and, in this Circuit, should be freely permitted.

36. Permitting the absolute preclusion of amended claims under such circumstances would not serve any legitimate purpose of the Bankruptcy Code and would be harsh, unjust, and

prejudicial to the rights of the Wyndham Franchisors.

## V. CONCLUSION

37. For the foregoing reasons, the Wyndham Franchisors request that any order setting a Bar Date in this matter apply only to originally filed proofs of claim and not to any amendment(s) of otherwise timely filed claims.

Respectfully submitted,

*/s/ David S Catuogno*
Daniel M. Eliades, Esq. (admitted *pro hac vice*)
David S. Catuogno, Esq (*admitted pro hac vice*)
K&L Gates LLP
One Newark Center, 10th Floor
Newark, New Jersey 07102
Telephone: (973) 848-4000
Email: daniel.eliades@klgates.com
Email: david.catuogno@klgates.com

August 28, 2024