**SO ORDERED.**

**SIGNED this 7th day of April, 2025.**



Dale L. Somers
United States Chief Bankruptcy Judge

**Designated for print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

Lodging Enterprises, LLC,                    Case No. 24-40423-11

                    Debtor.

**Memorandum Opinion and Order**
**Sustaining Debtor's Objections to Proofs of Claim**

Claimants American Hotel Income Properties REIT, Inc. and AHIP

Cargo Enterprises LLC (together hereinafter "American Hotel" or the Seller)

filed proofs of claim in the bankruptcy case of Debtor Lodging Enterprises,

LLC. Highly simplified, American Hotel sold to VCM Lodging Enterprises,

LP ("VCM" or the Purchaser) the membership interests in both Debtor and a

related limited liability company. In effect, the Seller sold to the Buyer the

equity interests of the Debtor, and now the Buyer controls and is the sole owner of Debtor, who itself owns a portfolio of hotels and related hard assets.

American Hotel filed proofs of claim in Debtor's case, claiming Debtor is holding $7 million from a holdback of the purchase price from the $215.5 million sale and American Hotel is entitled to that money. Debtor objects to the proofs of claim. The question is not whether American Hotel was to receive, or is entitled to receive, the $7 million upon certain conditions being met, but rather, does American Hotel have a claim *against Debtor* for that $7 million. After trial on the matter,[1] the Court concludes American Hotel does not have a claim for recovery of the holdback from Debtor: Debtor was not a party to the sale agreement at issue that established the holdback, and there

---

[1] American Hotel appears by Shannon Wead of Foulston Siefkin LLP and Benjamin Reeves of Snell & Wilmer LLP. Debtor appears by Jason Harbour and Brandon Bell of Hunton Andrews Kurth LLP and Jonathan Margolies of Seigfreid Bingham. VCM Lodging Enterprises, LP appears by R. Pete Smith of McDowell Rice Smith & Buchanan, P.C. Other parties appearing at the trial of this matter but not offering evidence were the Official Committee of Unsecured Creditors (appearing by Zachary R.G. Fairlie of Spencer Fane LLP and James Grogan of Greenberg Traurig, LLP), the Wyndham Franchisors (appearing by David Catuogno of K&L Gates LLP), and the Wilmington Trust, N.A, Trustee, for the benefit of the Registered Holders of UBS Commercial Mortgage Trust 2019-C18, Commercial Mortgage Pass-Through Certificates, Series 2019-C18, acting through its special servicer and agent Rialto Capital Advisors, LLC (appearing by Andrew J. Nazar of Polsinelli PC and Donald R. Kirk of Carlton Fields, P.A.).

is no legal basis for American Hotel's claim to that holdback *from Debtor*. The Court therefore sustains Debtor's objections to the proofs of claim at issue.[2]

## I.      Procedural Background

Debtor, a company specializing in lodging, food, and hospitality services across the United States, filed for relief under Chapter 11 on June 26, 2024. Shortly thereafter, on September 9, 2024, American Hotel filed Proofs of Claim, which were amended on October 15, 2024. The amended Proofs of Claim allege an unsecured claim of $7 million, based on "Breach of First Amendment to Purchase and Sale Agreement." Debtor objected to the Proofs of Claim and the Court scheduled a trial on the issue of whether American Hotel has a claim against Debtor. At trial, the Court heard testimony from Bruce Pittet, Chief Operating Officer of American Hotel (the Seller), and Tom Vukota, the managing member VCM (the Buyer) and the President of Debtor.

## II.      Findings of Fact

On July 11, 2019, VCM entered into a Purchase and Sale Agreement with the Seller/American Hotel. VCM and American Hotel agreed to the purchase and sale of the limited liability company membership interests in both Debtor (Lodging *Enterprises*, LLC) and a related limited liability company called Lodging *Properties*, LLC, for a purchase price of

---

[2] Doc. 260 (Debtor's objection), Doc. 264 (amended Debtor's objection), Doc. 273 (prepetition secured lender's joinder to Debtor's amended objection).

$215,500,000. At the time Lodging Enterprises, LLC was sold, it owned forty-four hotels and twenty-seven restaurants located in twenty-four states. The company specializes in 24-hour food, lodging, and hospitality services for employees within the transportation, railroad, construction, and resource sectors. Mr. Pittet was not involved on behalf of American Hotel in negotiating the sale with VCM but was involved in the due diligence for that sale. Mr. Vukota testified the intent was to structure the transaction as a leveraged buyout with the resulting debt being held as collateralized mortgage securities. VCM always planned that the purchase price would be paid by VCM and VCM would raise equity by causing Debtor to incur debt.

VCM agreed to pay the purchase price in two payments: a $4 million earnest money deposit, and the remainder in cash at closing. VCM planned to obtain the cash to make the closing cash payment through a loan to Debtor from UBS AG (the "Lender").[3] The original closing date was set for the end of September 2019.

---

[3] The Amendment to the Purchase and Sale Agreement defines Lender as "the party making a loan to Purchaser or its Affiliates in connection with the consummation of the transaction contemplated by the [Purchase and Sale Agreement], together with its successors and/or assigns and servicers engaged in connection with servicing such loan." Ex. J-2 p. JD_000156. The Lender is UBS AG, referred to by the parties via the servicer of the trust within which it appears, namely, Rialto Capital Advisors, LLC. The Court will refer to this entity simply as the Lender.

4

The purchase did not close when originally intended. A little over four months after the Purchase and Sale Agreement was signed, on November 25, 2019, VCM and American Hotel entered into a First Amendment to the Purchase and Sale Agreement. That Amendment, among other things, extended the closing date to November 26, 2019, and provided that New York law was applicable.

The Amendment also added a new Section 2.13 to the Purchase and Sale Agreement. Section 2.13 generally discusses the renewal of an agreement between Debtor and the Union Pacific Railroad Company for the provision of lodging services at certain of Debtor's hotels—this agreement between Debtor and Union Pacific Railroad Company is referred to by the parties as the "UP 15 Agreement."

As noted, Debtor's business includes the provision of lodging, meals, and transportation to Union Pacific Railroad train crews at various hotels across Kansas and other states. The provision of these services is governed by a contract between Debtor and the railroad. At the time of the Purchase and Sale Agreement, that contract for fifteen of the locations was due to expire in several months, which caused the Lender to question whether VCM would be acquiring a viable business that would be able to service the anticipated debt. To salvage the deal, VCM, American Hotel, and the Lender agreed that as a

5

condition to funding the purchase, the Lender would hold back $7 million of the purchase price pending renewal of the Union Pacific contract.

The Amendment provided for the holdback of $7 million of the total purchase price, referred to as the "UP 15 Renewal Amount." Section 2.13 of the Amendment, titled "Payment of the UP 15 Renewal Amount," states in pertinent part:

> (a) At the Closing, the Seller shall deliver the UP 15 Renewal Amount to the Purchaser for deposit into a reserve account with the Lender, and subject to the Lender's security interests until such time as the UP 15 Renewal Amount is released by the Lender in accordance with the Loan Documents.

> (b) Within fifteen (15) days after the satisfaction of the Release Conditions, Purchaser or its Affiliates shall direct the Lender to pay the UP 15 Renewal Amount to Seller pursuant to wire transfer instructions to be furnished by the Seller, and if the Lender thereafter pays the UP 15 Renewal Amount to Purchaser or any of its Affiliates in lieu of Seller, Purchaser shall cause the same to be promptly remitted to Seller.[4]

The Court interprets Section 2.13(a) of the Amendment as accomplishing the holdback. It provides that at closing, American Hotel "shall deliver the UP 15 Renewal Amount [i.e., the $7 million] to the Purchaser [VCM] for deposit into a reserve account with the Lender, and subject to the Lender's security

---

[4] Ex. J-2 p. JD_000157.

interests, until such time as the [$7 million] is released by Lender in accordance with the Loan Documents."

Section 2.13(b) then accomplishes the release of the funds held back. It provides that after satisfaction of certain conditions, "Purchaser [VCM] or its Affiliates shall direct the Lender to pay the [$7 million] to [American Hotel]." The Amendment to the Purchase and Sale Agreement defines the "Release Conditions" referred to in Section 2.13(b) as the conditions stated in the Loan Documents[5] and the "conditions are substantially in the form excerpted from the Loan Documents."[6] The record clearly establishes that release is conditioned on two events: (1) renewal of the UP-15 contract between Debtor and Union Pacific and (2) Debtor meeting defined performance criteria.

The Purchase and Sale Agreement closed on November 27, 2019. The Borrower's Closing statement shows that $7 million of the net funding was set aside in a "Rail Contract Renew Reserve"[7] and the Master Closing Statement shows the $7 million "UP15 Renewal Amount" as both a Buyer

---

[5] The Loan Agreement defines "Loan Documents" to mean "collectively, this Agreement, the Note, the Security Instrument, the Recourse Guaranty, the Payment Guaranty, the Special Guaranty . . . and all other documents, agreements, certificates and instruments now or hereafter executed and/or delivered by Borrower, Manager, and/or Guarantor in connection with the Loan." Ex. J-4 p. JD_000236.

[6] Ex. J-2 p. JD_000157.

[7] Ex. J-5 p. JD_000436 (listing $7 million on the Borrower's Closing Statement under "Up-front Escrows" as "Rail Contract Renewal Reserve").

7

Credit (money that went to pay off what VCM owed) and a Seller Charge (money owed to American Hotel).[8]

At closing, VCM as Purchaser became the owner of the limited liability interests of Debtor and VCM remains the sole member of Debtor. Debtor became the obligor on a $145 million loan. Also on the closing date, November 27, 2019, Debtor signed a Loan Agreement with the Lender, under which Debtor borrowed $145 million to finance part of the $215.5 million purchase price under the Amended Purchase and Sale Agreement.[9] That same date, Mr. Vukota also entered into a Recourse Guaranty.[10]

Additionally on November 27, 2019, and in connection with both the Loan Agreement and the Amended Purchase and Sale Agreement, Debtor entered into a "Fifth Amended and Restated Limited Liability Company Agreement," which remains as Debtor's current limited liability company agreement.

Post closing of the sale, Mr. Pittet, who has spent his career in the hospitality business, testified he kept abreast of the negotiations between

---

[8] Ex. J-6 p. JD_000441.

[9] The $7 million was part of the $145 million loan proceeds transferred from the Lender to the servicer, Midland Loan Services, and then deposited into Debtor's reserve account, which the Lender controlled and held a security interest in. The money was then comingled with other funds being held in reserve by the Lender.

[10] The Recourse Guaranty was subsequently amended on December 4, 2019.

8

Debtor and the railroad regarding renewal of the UP 15 contract. VCM agrees it covenanted it "would and would cause Debtor to advise" American Hotel of the status of communications and negotiations regarding renewal of the UP 15 contract.[11]

In January 2023, counsel for American Hotel inquired of Mr. Vukota and others about the status of the UP 15 Renewal Amount.[12] An officer of Debtor responded that "the long delay in the [Union Pacific] renewal process . . . led to a cash sweep trigger event. [American Hotel's] cash along with ours is trapped in accordance with the UBS Loan Agreement."[13] American Hotel was advised Debtor did not anticipate cure of the performance covenant until early 2025, at the earliest.[14]

Mr. Vukota testified regarding several email strings and correspondence addressing renewal of the UP 15 contract,[15] accounting for the UP 15 Renewal Amount,[16] Debtor's financial condition,[17] and projections

---

[11] *See* Ex. J-2 p. JD_000157 ("The Purchaser covenants and agrees that it will, and will cause the Purchased Entities and the hotel manager for the UP 15 Hotels and their respective Affiliates, to: (i) advise the Seller of all communications of a material nature with the Railway with respect to the Renewal[.]").

[12] Ex. J-23.

[13] Ex. J-24 p. JD_000568.

[14] *Id.*

[15] Ex. M and Ex. J-25.

[16] Ex. F.

[17] Ex. J-26, Ex. G, Ex. J.

when the conditions for release of the UP 15 Renewal Amount might be satisfied.[18] Mr. Vukota testified VCM's intent, along with the Lender and Debtor, was for Debtor as borrower to be a Single Purpose Entity to satisfy underwriting criteria for the investors. As a Single Purpose Entity, one of the limitations found in Section 4.1.2.13 of the Loan Agreement was to prohibit Debtor from taking on debt other than the permitted obligation. If Debtor took on liability for VCM's obligation to American Hotel, it would constitute a breach of its Loan Agreement, thereby triggering Mr. Vukota's personal guaranty agreement.

Ultimately, the renewal of the UP 15 contract was successfully completed in September 2023, but, contrary to American Hotel's expectations, the UP 15 Renewal Amount was not released to American Hotel. It is undisputed American Hotel has never received the $7 million. The parties agree that as of the date of Debtor's filing for relief under Chapter 11, the contract between Debtor and Union Pacific had been renewed, but the UP 15 Renewal Amount had not been released by the Lender. American Hotel's proofs of claim allege the conditions for release of the $7 million UP 15 Renewal Amount have been satisfied and they are entitled to payment.[19]

---

[18] Ex. J-26.

[19] The Proofs of claim enumerate the following legal theories under which American Hotel contends Debtor is liable: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) unjust enrichment; (4) constructive trust; (5) the

10

## III. Conclusions of Law

Matters concerning the "allowance or disallowance of claims against the estate" are core proceedings under 28 U.S.C. § 157(b)(2)(B) over which this Court may exercise subject matter jurisdiction.[20]

### A. Claim Litigation under the Bankruptcy Code and Burden of Proof

The Code broadly defines claim to mean "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

---

doctrines of justice and fair play; (6) conversion; and (7) fraudulent conveyance. Debtor's objections to the Proofs of Claim are divisible into two principal parts. First, Debtor contends American Hotel has no claim against Debtor because Debtor was not a party to the Purchase and Sale Agreement, the Amendment to the Purchase and Sale Agreement, or any other agreement with American Hotel which requires release of the UP-15 Renewal Amount to Debtor and none of the legal theories asserted by American Hotel provide a basis for recovery from Debtor. Second, Debtor alleges even if American Hotel has a legal basis to assert a claim and although the UP 15 contract has been renewed, the conditions for release of the UP 15 Renewal Amount have not been satisfied.

At a pretrial hearing, the Court ruled the trial on the objections to the Proofs of Claim would be limited to whether American Hotel has a claim at all against Debtor. Doc. 350 p. 38 (Transcript of Hearing held on Nov. 2, 2024). Accordingly, the following issues are not before the Court and will not be addressed in this opinion: (1) what are the conditions for release of the UP 15 Renewal Amount; (2) whether the conditions for release of the UP 15 Renewal Amount have been satisfied; and (3) whether the accounting of the UP Renewal Amount or other events has resulted in the creation of a designated fund for the benefit of American Hotel.

[20] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1 *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

11

contingent, matured, unmatured, disputed, [or] undisputed."[21] A claim also includes the "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment."[22] A proof of claim is deemed allowed unless a party in interest objects.[23] In that event, after notice and hearing the court shall determine the amount of the claim as of the date of filing the petition.[24] However, the claim must be disallowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."[25] Nonbankruptcy law governs the substance of claims.[26]

A "properly filed proof of claim constitutes prima facia evidence of the validity and amount of the claim."[27] The objecting party to a proof of claim has the burden to go forward with evidence to support its objection.[28] After reaching that threshold, the creditor "has the ultimate burden of persuasion

---

[21] 11 U.S.C. § 101(5).

[22] *Id.*

[23] 11 U.S.C. § 502(a).

[24] 11 U.S.C. § 502(b).

[25] 11 U.S.C. § 502(b)(1).

[26] *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).

[27] *In re Kennedy*, 568 B.R. 367, 373 (Bankr. D. Kan. 2017) (internal quotation omitted).

[28] *Id.*

as to the validity and amount of its claim."[29] The Court concludes Debtor has

credibly objected to the validity of American Hotel's proofs of claim, and

American Hotel must prove it has a valid right to payment from Debtor.

The determinative issue in this claim objection litigation is whether

American Hotel has a claim *against the Debtor*: *i.e.*, is American Hotel's claim

enforceable against Debtor under New York law.[30] American Hotel and

Debtor agree Debtor is not a party to the Purchase and Sale Agreement, the

Amendment to that Agreement, or any other contract with American Hotel

relevant to the deposit or release of the UP 15 Renewal Amount.[31] American

---

[29] *Id.* (internal quotations omitted); *see also In re Alternate Fuels, Inc.*, 789 F.3d 1139, 1153 (10th Cir. 2015) (holding that when a trustee objects to a claim, "the creditor carries the burden of persuasion as to the validity and amount of the claim").

[30] The Purchase and Sale Agreement and the Amendment are governed by and construed in accordance with the laws of the State of New York. Ex. J-1 § 13.4 p. JD_000074; Ex. J-2 § 5.2 p. JD_000161.

[31] In its Trial Brief, American Hotel points out Section 2.13(b) of the Amendment to the Purchase and Sale Agreement requires "Purchaser [VCM] *or its Affiliates*" to "direct the Lender" to pay the UP 15 Renewal Amount to American Hotel, arguing the parties' Agreement defines "Affiliate" broadly to include Debtor, and therefore Debtor itself was contractually obligated to pay the amount to American Hotel once Release Conditions were satisfied. But as noted, the parties agree Debtor is not a party to the contract, and even if the parties had not so agreed, the Court would conclude because Debtor is a non-party to the Amended Purchase and Sale Agreement, American Hotel cannot succeed on a breach of contract theory against Debtor. *See MBIA Ins. Corp. v. Royal Bank of Canada*, No. 12238/09, 2010 WL 3294302, at *24 (N.Y. Sup. Ct. Aug. 19, 2010) ("It is well settled, under New York law, that one who is not a party to an agreement cannot be bound by it."); *see also Centennial Energy Holdings, Inc. v. Colo. Energy Mgmt., LLC*, 934 N.Y.S.2d 32, 2011 WL 2712961, at *6 (N.Y. Sup. Ct. July 6, 2011) (rejecting attempt by party to "look through the parent . . . who is the signatory to the contract, to get to affiliates . . . who are not"). Regardless, the Court reads the Amended Purchase and Sale

Case 24-40423    Doc# 462    Filed 04/07/25    Page 13 of 28

Hotel therefore relies on seven theories of recovery other than breach of an express agreement with Debtor as the basis for its claim. Those theories are breach of contract by non-signatory; breach of the implied covenant of good faith and fair dealing; unjust enrichment; constructive trust; alter ego; conversion; and recipient of a fraudulent transfer.

## B. Recovery for breach of contract by a non-signatory.

As noted, American Hotel has not, and is not, asserting a breach of contract claim directly against Debtor. New York law is clear: "It is well established that, generally, a party who is not a signatory to a contract cannot be held liable for breaches of that contract."[32] There is an "exception to this general rule,"[33] however, namely, "when a non-signatory is found to have manifested an intent to be bound by the contract."[34]

American Hotel's first basis for recovery therefore, is the principle that under New York law, a non-signatory can be liable for a contract by manifesting intent to be bound (without being an 'alter ego' of a signatory to the contract), if the non-signatory's actions show that they are in privity of

---

Agreement to mean VCM, as the party who signed the Agreement, agreed to be liable under the contract if it or any of its affiliates did not take the actions required within the Agreements.

[32] *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009).

[33] *Id.*

[34] *Id.*

contract or that they assumed obligations under the contract.[35] This

exception is described in a New York practice handbook in part as follows:

> A non-signatory may be named as a defendant in an action to
> enforce the contract when:
> • it has assumed the obligations of the contract;
> • it indicates, by its performance of the contract's terms or other
> unequivocal acts, that it intends to adopt the contract.[36]

For example, in *Impulse Marketing Group v. National Small Business

Alliance, Inc.*,[37] the a New York court found allegations sufficient to plead a

claim when the non-signatory purportedly assumed the contract by

acknowledging it was the real party in interest, micro-managed the

performance of the contract, and made payments on behalf of the signatory to

the contract.[38]

    The facts herein do not support such a claim. American Hotel failed to

demonstrate Debtor assumed the obligations of the Amended Purchase and

Sale Agreement or that it indicated by its performance to adopt the Amended

---

[35] *Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. All., Inc.*, No. 05-CV-7776 (KMK), 2007 WL 1701813, at *5 (S.D.N.Y. June 12, 2007) ("a non-signatory to a contract can be named as a defendant in a breach of contract action only if the party is in privity with the plaintiff or has assumed the obligations of the contract").

[36] 28 N.Y. Prac., Contract Law § 8.19

[37] No. 05-CV-7776 (KMK), 2007 WL 1701813 (S.D.N.Y. June 12, 2007) (applying New York law).

[38] *Id.* at *6.

Purchase and Sale Agreement.[39] American Hotel argues Debtor assumed the obligations under the Amended Purchase and Sale Agreement when it borrowed the $145 million to finance part of the purchase price under that Agreement, and "accepted" the $7 million UP 15 Renewal Amount.[40] But the fact VCM's purchase was funded in part by Debtor's loan proceeds is evidence of VCM's decision to raise capital through a loan to its subsidiary; it is not evidence Debtor performed the contract. Likewise, Debtor advising American Hotel of the status of the UP 15 contract negotiations does not evidence assumption of the contract by Debtor.[41] Debtor communicated with American Hotel, but there is no evidence Debtor assumed obligations by merely communicating the status of the UP 15 Renewal Amount. All parties were

---

[39] The facts herein are also unlike case law in New York finding the plaintiff stated a claim against the non-signatory to the contract under this theory. For example, in *Horsehead Industries, Inc. v. Metallgesellschaft AG*, 657 N.Y.S.2d 632 (N.Y. App. Div. 1997), the court concluded a claim was properly alleged for breach of contract against a non-signatory when the non-signatory was the parent company, the parent extensively participated in the negotiations between the subsidiary and the plaintiff, the parent wholly owned the subsidiary and dominated the day-to-day affairs of the subsidiary, and the parent "performed the act that allegedly breached" the contract at issue. *Id.* at 633. First, here American Hotel is attempting the reverse—to show the subsidiary should be liable for the faults of the parent, despite the parent negotiating the Purchase and Sale Agreement. Second, the evidence did not show anything more than simple communications from the subsidiary.

[40] Doc. 336 p. 7.

[41] The Amended Purchase and Sale Agreement provides in section 2.13(c) that: "The Purchaser covenants and agrees that it will, and will cause the Purchased Entities [Debtor] . . . , to: (i) advise the Seller of all communications of a material nature with the Railway with respect to the Renewal." Ex. J-2 p. JD_000157.

16

concerned with the status of the UP 15 Renewal Amount—it benefitted all to have the issue resolved.

Not only has American Hotel failed to provide evidence Debtor intended to assume obligations under the Amended Purchase and Sale Agreement, in addition, other transaction documents are inconsistent with such intent. The LLC Agreement prohibits Debtor from agreeing to be liable for obligations to American Hotel, including under Section 21(c)(iv), which prohibits incurring any Indebtedness other than permitted debt under the Loan Agreement, and under Section 21(c)(v), which prohibits acquiring any obligations of any Affiliates, which would include any obligations of VCM to American Hotel. The Loan Agreement would also have been breached, as the Single Purpose Entity limitations found in Section 4.1.2.13 of that Loan Agreement prohibit Debtor from taking on debt to American Hotel. American Hotel argues it was not a party to these Loan Documents, but the point is Debtor's actions and intent, and Debtor's actions and intent are clear there is no intent to adopt the Purchase and Sale Agreement.

American Hotel did not establish the exception to the general rule applies: the Court concludes the evidence does not support a finding Debtor intended to be bound by the contract at issue, assumed the obligations of that contract, or intended to adopt the contract.

**C.** **Breach of the implied covenant of good faith and fair dealing.**

American Hotel next relies upon the implied covenant of good faith and fair dealing to recover the UP 15 Renewal Amount from Debtor. American Hotel alleges Debtor "breached the implied covenant of good faith and fair dealing by not remitting" the $7 million "back to" American Hotel.[42] Recovery on this theory requires (1) a finding Debtor, a non-signatory to the Amended Purchase and Sale Agreement, is obligated to perform the contract; and (2) the conditions for release of the UP 15 Renewal Amount are known and satisfied.

While all contracts analyzed under New York law impliedly require good faith and fair dealing in performance,[43] that duty is imposed only on the parties to the contract.[44] As noted throughout, American Hotel has not shown

---

[42] Doc. 336 p. 8.

[43] *Cordero v. Transamerica Annuity Serv. Corp.*, 211 N.E.3d 663, 670 (N.Y. 2023) ("In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance." (internal quotation marks omitted)); *MBIA Ins. Corp. v. Royal Bank of Canada*, 28 Misc. 3d 1225(A), 2010 WL 3294302, at *35 (N.Y. Sup. Aug. 19, 2010) ("Under New York law, within every contract is an implied covenant of good faith and fair dealing."). The implied covenant requires the parties to the contract to perform in a reasonable way. *Cordero*, 211 N.E.3d at 670.

[44] *Veneto Hotel & Casino, S.A. v. German Am. Cap. Corp.*, 75 N.Y.S.3d 4, 5 (2018) ("With respect to the . . . breach of the implied covenant claims asserted by plaintiff . . ., these were also properly dismissed. Defendant was not a party to the agreements sued upon, and plaintiffs are unable to overcome this fatal defect."); *Randall's Island Aquatic Leisure, LLC v. City of New York*, 938 N.Y.S.2d 62, 63 (2012) ("There can be no claim of breach of the implied covenant of good faith and fair dealing without a contract.").

Debtor is a party to the contract or is obligated to perform that contract. An alleged breach of the covenant of good faith and fair dealing does not provide legal support for American Hotel's claim.

## D. Unjust enrichment.

American Hotel next relies on the theory of unjust enrichment to state a claim against Debtor for the UP 15 Renewal Amount. Unjust enrichment claims are equitable claims—they are "rooted in the equitable principle that a person shall not be allowed to enrich themselves unjustly at the expense of another."[45] "To recover under a theory of unjust enrichment, a litigant must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."[46]

As noted, an unjust enrichment claim is an equitable claim, but it is also quasi-contract. "[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent

---

[45] *Columbia Mem. Hosp. v. Hinds*, 192 N.E.3d 1128, 1137 (N.Y. 2022) (internal quotations and alteration omitted).

[46] *Id.* (internal quotations omitted). *See also J.P. Plumbing Corp. v. Born to Build Const. Corp.*, 27 N.Y.S.3d 203, 204 (N.Y. App. Div. 2016) ("To recover for unjust enrichment, a plaintiff must show that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.").

19

injustice, in the absence of an actual agreement between the parties."[47] That said, the absence of a contract between Debtor and American Hotel is not determinative, because there is a contract between VCM and American Hotel. In New York, "[q]uasi contract claims are barred when the complaint alleges the existence of an express contract covering the dispute. This prohibition against quasi-contractual claims in the face of an express contract applies not only to the parties in privity of contract, but [also to] noncontracting parties."[48] Because there is a contract to which American Hotel is a party, American Hotel should proceed under that contract for recovery.

Further, the Court concludes American Hotel's equity argument fails. American Hotel received the benefits of its bargain with VCM under the Amended Purchase and Sale Agreement. The terms were agreed to by the parties, and American Hotel has shown no basis to change those agreed-upon terms. The terms of the Purchase and Sale Agreement and the Amendment thereto were heavily negotiated. Those contracts exist as they are on purpose

---

[47] *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (internal citation omitted).

[48] *Dragons 516 Ltd. v. GDC 138 E 50 LLC*, 162 N.Y.S.3d 6, 8 (N.Y. App. Div. 2022). *See also A.N.L.Y.H. Invs. LP v. JDS Principal Highline LLC*, 220 N.Y.S.3d 274, 276 (2024) ("Because the subject matter of the loan and the terms of its repayment are governed by the promissory note – a written agreement whose validity and enforceability is not in dispute – quasi-contractual claims based on the same subject matter will not lie, even against a nonparty to the promissory note.").

in furtherance of the need to structure the deal in a way that was viable to the Lender. American Hotel knew the Lender would have a security interest in the funds: that is expressly stated in Section 2.13(a) of the Amendment, signed by VCM and American Hotel. There is no loss of equity to hold American Hotel to the terms it agreed to.[49]

## E.     Constructive trust.

American Hotel also seeks to establish its claim against Debtor based on the presence of a constructive trust. Again, a constructive trust is an equitable remedy.[50] "A party seeking to impose a constructive trust under New York law must generally establish four elements by clear and convincing evidence: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment."[51]

---

[49] Despite the Court limiting the trial to whether American Hotel has a claim against Debtor, American Hotel repeatedly argued at trial the Release Conditions were satisfied, it was entitled to the UP 15 Renewal Amount, and it was inequitable for American Hotel to not receive the funds. American Hotel's theories of unjust enrichment, constructive trust, conversion, and receipt of fraudulent transfer appear to stem from these equitable arguments. The Court considers the theories as a means of establishing a claim against Debtor, not as a basis for considering whether American Hotel "should" receive the funds because it is "owed" the funds— an issue expressly not before the Court.

[50] *Simonds v. Simonds*, 380 N.E.2d 233, 241 (N.Y. 1978).

[51] *In re Genesis Glob. Holdco, LLC*, 658 B.R. 31, 54 (Bankr. S.D.N.Y. 2024).

Certainly, American Hotel cannot establish a traditional claim of constructive trust. There is a business relationship, but not a confidential or fiduciary relationship.[52] And there is no express promise from Debtor to American Hotel. American Hotel attempts to get around this by arguing for a "flexible" approach to the constructive trust claim, citing case law holding the doctrine should be applied to ensure equity.[53] But again, as the Court concluded above, the equities here do not favor the imposition of an equitable remedy. Debtor made no promises to American Hotel. The funds at issue are loan proceeds – retained by the Lender – not funds transferred from American Hotel to Debtor in circumstances that demand equity to intervene. The parties to the contracts at issue are all sophisticated entities. American Hotel expressly agreed in Section 2.13(a) of the Amendment to the Purchase and Sale Agreement that the $7 million would be subject to the Lender's

---

[52] *See Feigen v. Advance Cap. Mgmt. Corp.*, 541 N.Y.S.2d 797, 283 (N.Y. App. Div. 1989) ("A conventional business relationship does not create a fiduciary relationship in the absence of additional factors.").

[53] *See*, *e.g.*, *Bankers Sec. Life Ins. Soc'y v. Shakerdge*, 406 N.E.2d 440, 440 (N.Y. 1980) (noting constructive trusts are an equitable doctrine and "application to particular circumstances is susceptible of some flexibility"); *Simonds v. Simonds*, 380 N.E.2d 189, 194 (N.Y. 1978) (noting that although the factors for finding a constructive trust are useful, the constructive trust doctrine is "not rigidly limited").

security interest. There is no unjust enrichment on these facts, and as a result, no constructive trust.[54]

## F.   Alter Ego

American Hotel next argues its claim exists against Debtor based on an alter ego theory, but the evidence at trial did not support such a claim. To show a corporate veil should be pierced and a separate legal form disregarded, a party must show "complete domination of the corporation in respect to the transaction attacked and that such domination was used to commit a fraud or wrong against the plaintiff."[55] Debtor was certainly controlled by VCM as VCM was its parent entity. But even assuming domination, the evidence did not support a conclusion of fraud or malfeasance by VCM or Debtor to support disregard of the two entities' separate structures, which is required under New York to support such a claim.[56]

---

[54] *In re Genesis Glob. Holdco*, 658 B.R. at 55 ("the absence of unjust enrichment, standing alone, is fatal to a request for a constructive trust" (internal quotations omitted)).

[55] *Cortlandt Street Recovery Corp. v. Bonderman*, 207 N.Y.S.3d 52, 54 (N.Y. App. Div. 1986) (internal quotations omitted).

[56] *See Sheridan Broad. Corp. v. Small*, 798 N.Y.S.2d 45, 46 (N.Y. App. Div. 2005) ("Parent and subsidiary or affiliated corporations are, as a rule, treated separately and independently so that one will not be held liable for the contractual obligations of the other absent a demonstration that there was an exercise of complete dominion and control, but evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance." (internal citation and quotation omitted)).

23

Not only are the elements for an alter ego theory not established, but the evidence at trial also supported the opposite conclusion, that American Hotel was well aware of the separate legal entities involved. The corporate forms chosen (i.e., the use of a Single Purpose Entity and the structure of the lending relationship) were not hidden or unknown to American Hotel.[57] American Hotel did not support its claim via an alter ego theory.

## G. Conversion

American Hotel also seeks to establish a claim against Debtor based on the tort of conversion. A conversion occurs "when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."[58] Two elements must be proven: "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."[59]

---

[57] *Id.* at 47 ("an inference of abuse does not arise . . . where a corporation was formed for legal purposes or is engaged in legitimate business" (internal quotation omitted)).

[58] *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006).

[59] *Id. See also Whitman Realty Grp., Inc. v. Galano*, 838 N.Y.S.2d 585, 592 (N.Y. App. Div. 2007) ("Regarding the conversion cause of action, . . . [t]he plaintiff failed to come forward with evidentiary facts showing that it had legal ownership or an immediate right of possession to specifically identifiable funds and that the defendant exercised an unauthorized dominion over such funds to the exclusion of the plaintiff's rights.").

Case 24-40423    Doc# 462    Filed 04/07/25    Page 24 of 28

But again, American Hotel's efforts to shoehorn a contract action into something viable against Debtor is unavailing. Even if American Hotel had established a contractual right to payment *from Debtor*, that would be insufficient under New York law, because contract rights cannot establish the tort claim of conversion.[60] American Hotel's claim is based in contract. American Hotel agreed in the contract the Lender would have a security interest in the funds.[61] The facts established at trial do not support a conclusion American Hotel had a possessory right to the funds or that Debtor interfered with the UP 15 Renewal Amount in derogation of American Hotel's rights to those funds. American Hotel did not prove a claim against Debtor based on conversion.

---

[60] *See, e.g., Daub v. Future Tech Enter., Inc.*, 885 N.Y.S.2d 115, 118 (N.Y. App. Div. 2009) ("Since the seventh cause of action is based upon an alleged contractual right to payment where the plaintiff never had ownership, possession, or control of the disputed funds, the Supreme Court properly granted that branch of the motion which was to dismiss the seventh cause of action to recover damages for conversion, as the plaintiff failed to state a cause of action."); *Whitman Realty Grp., Inc.*, 838 N.Y.S.2d at 592 ("The plaintiff did not raise a triable issue of fact with respect to its cause of action to recover damages for conversion because, at best, it showed only a contractual right to payment where it never had ownership, possession, or control of the disputed monies."); *Castaldi v. 39 Winfield Assocs.*, 820 N.Y.S.2d 279, 280 (N.Y. App. Div. 2006) ("[W]e find that the conversion claim fails to state a cause of action. Although the plaintiff alleged a contractual right to payment for renovation work it performed on premises owned by the defendant . . ., it never had ownership, possession, or control of the proceeds realized from the sale of the renovated premises. Accordingly, the conversion claim asserted against the appellant, who allegedly had control over the sale proceeds, must fail.").

[61] American Hotel never had ownership of the funds. The funds at closing were placed in Debtor's reserve account for the Lender, and American Hotel always designated the funds as a receivable on its financial reports.

**H.     Receipt of Fraudulent Transfer**

Finally, American Hotel asserts its claim against Debtor for the UP 15 Renewal Amount based on an alleged fraudulent transfer. Under New York's fraudulent transfer law, "A transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor."[62]

Whether a transfer was made with intent to hinder, delay, or defraud can be shown by direct evidence or by inference "from the circumstances surrounding the allegedly fraudulent transfer."[63] "In determining whether a conveyance was fraudulent, the courts will consider 'badges of fraud,' which are circumstances that accompany fraudulent transfers so commonly that their presence gives rise to an inference of intent."[64] The badges of fraud considered by New York courts include: "lack or inadequacy of consideration, family, friendship, or close associate relationship between transferor and transferee, the debtor's retention of possession, benefit, or use of the property in question, the existence of a pattern or series of transactions or course of

---

[62] N.Y. Debt. & Cred. Law § 273(a)(1) (McKinney 2020).

[63] *Steinberg v. Levine*, 774 N.Y.S.2d 810, 810 (N.Y. 2004).

[64] *Id.*

Case 24-40423     Doc# 462     Filed 04/07/25     Page 26 of 28

conduct after the incurring of debt, and the transferor's knowledge of the creditor's claim and the inability to pay it."[65]

American Hotel argues VCM "transferred" the UP 15 Renewal Amount to Debtor for no consideration and claims a badge of fraud is present because of the "close associate relationship between the transferor and transferee." First, as continuously noted herein, the evidence does not support a conclusion VCM transferred any funds to Debtor. Rather, the funds were proceeds of the loan from the Lender to Debtor and all parties were aware of the lending relationship and the Lender's security interest at the time the contracts were signed. American Hotel agreed on the path for the funds and knew the funds would be subject to the Lender's security interest. Second, there is no evidence of fraudulent intent. Other than VCM being Debtor's parent organization, there are simply no other circumstances present giving rise to an inference of an intent to hinder, delay, or defraud.

## IV. Conclusion

American Hotel, in its contract with VCM, agreed that $7 million of the purchase price funded by a loan to Debtor would be held back from American Hotel, and the Lender would have a security interest in that $7 million, which would be released if certain conditions were met. This did not

---

[65] *Id.*

obligate Debtor, a non-party to the contract, to pay American Hotel the $7 million. American Hotel does not have an allowable claim against Debtor. While American Hotel may have a claim against VCM, Debtor's sole equity holder, or the Lender, American Hotel has not shown a basis in law or fact to convert its claim into one against Debtor.

The Court therefore sustains the objections[66] to the proofs of claim filed by American Hotel in Debtor's case.

**It is so Ordered.**

###

---

[66] Doc. 260 (Debtor's objection), Doc. 264 (amended Debtor's objection), Doc. 273 (prepetition secured lender's joinder to Debtor's amended objection).